[No. 25610-0-II. Division Two. September 28, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. WALLACE MICHAEL SMITH, JR., *Appellant*.

*Kristen A. Reid* and *Craddock D. Verser*, for appellant (appointed counsel for appeal).

*Juelie B. Dalzell, Prosecuting Attorney,* and *Jill Landes, Deputy,* for respondent.

ARMSTRONG, C.J.—The State charged Wallace Michael Smith, Jr., with first degree rape of a child. At a pretrial hearing, the trial court found that the child victim, J.S., was unavailable due to her emotional state. The court also found that J.S.'s out-of-court statements to various adults were sufficiently reliable and corroborated to admit them under the child hearsay statute, RCW 9A.44.120. Smith would not concede that J.S. was unavailable and asked that the State take J.S.'s testimony over a closed-circuit television system. The trial court denied the request, stating that Jefferson County did not have such facilities. J.S. did not testify at trial, and the court admitted her hearsay statements. The jury convicted Smith. He now appeals, claiming that the trial court erred by denying his request for closed-circuit television facilities and by admitting J.S.'s hearsay statements.

## FACTS

In November 1998, five-year-old J.S. told her aunt, Christine Campbell, that her mother's boyfriend, Michael Smith, touched her "private part." Suppl. Report of Proceedings (RP) at 63. J.S. repeated these accusations to other adults, including a nurse practitioner, a detective, a counselor, and a physician.

The Jefferson County Prosecuting Attorney charged Smith with one count of first degree rape of a child. After the State filed its notice of intent to introduce hearsay pursuant to RCW 9A.44.120, the child hearsay statute, the court set a hearing to determine J.S.'s competency to testify

and the admissibility of her hearsay statements. At the hearing, when J.S. entered the courtroom and saw Smith, she became scared, began to cry, and "clammed up." Suppl. RP at 13. The court asked Smith if he would waive his right to confront J.S. and stipulate that she was incompetent or unavailable to testify. Smith refused. Based on RCW 9A.44.150, which allows children to testify by closed-circuit television under some circumstances, Smith requested that the State have J.S. testify at trial by "closed circuit TV or video transmission." Suppl. RP at 16. The court responded that the courthouse lacked such facilities. The court then heard testimony on J.S.'s ability to testify.

Jean Koester, a social worker with the Division of Child and Family Services, testified that J.S. might be able to testify. She stated,

> I believe that she would [be able to testify], but I think that testimony would be best obtained if she could do it in a quiet reassuring environment rather than a larger courtroom such as this. . . . For example, if she were able to sit down with the Judge in closed Chambers with one or two people that she trusted.

Suppl. RP at 26. Koester also opined that alternative physical arrangements for testifying "might be worth exploring further." Suppl. RP at 27. After stating that "we don't have the option of having [J.S.'s] testimony presented to a small group of people in a comfortable setting," the court asked Koester if she thought J.S. could testify in open court. Suppl. RP at 28-30. Koester responded that J.S. might be able to in time and after additional work with a therapist.

Lisa Marks, J.S.'s therapist, testified that in her opinion J.S. would not be able to testify in open court. She also stated that closed-circuit television "might" work, but probably would not. Suppl. RP at 51.

After hearing argument, the court ruled that J.S. was "unavailable" for the purposes of the child hearsay statute. Suppl. RP at 58. The judge noted J.S.'s reaction and

demeanor as she entered the courtroom, as well as testimony describing the State's efforts in previous weeks to familiarize J.S. with the courtroom and prepare her for the experience of testifying. Addressing Smith's repeated request for closed-circuit television arrangements, the court stated, "[W]e do not have . . . an arrangement for the defendant to be absent from the Courtroom, or watch the proceedings by video tape . . . . That's not something that we have available, and it's not required by the statute, as I understand the statute." Suppl. RP at 60. After finding, as required by RCW 9A.44.120, that J.S.'s statements were sufficiently reliable and corroborated, the court ruled that her statements were admissible.

At trial, the State introduced five of J.S.'s six hearsay statements. J.S. did not testify. The jury convicted Michael Smith of first degree rape of a child.

## ANALYSIS

Smith assigns error to the trial court's refusal to require closed-circuit television testimony; he also claims that the trial court erred by finding J.S. unavailable to testify.

RCW 9A.44.150 allows a child victim of abuse to testify via closed-circuit television in certain circumstances. The statute requires the court to find that the child will suffer serious emotional distress that will interfere with her ability to reasonably communicate if she is forced to testify in open court. RCW 9A.44.150(1)(c), (d). The court must also find that the State has "made all reasonable efforts to prepare the child for testifying," and that there is no less restrictive method of obtaining the testimony. RCW 9A.44.150(1)(e), (g). Under the statute, the defendant must be able to communicate with his attorney during the testimony, and the judge must be able to communicate with the attorneys. RCW 9A.44.150(1)(h), (i). The trial court may allow the use of closed-circuit television "[o]n motion of the prosecuting attorney in a criminal proceeding." RCW 9A.44.150(1). If video facilities are used, "[t]he state shall

bear the costs of the closed-circuit television procedure."
RCW 9A.44.150(9).

## I. Smith's "Right" to Closed-Circuit Testimony

Smith makes two arguments. First, he claims that under
RCW 9A.44.150 he "was entitled to have the closed-circuit
video feed made available at the State's expense." Br. of
Appellant at 19. He contends that RCW 9A.44.150(9) re-
quires this with the language "[t]he state shall bear the
costs of the closed-circuit television procedure." The legis-
lature's use of the word "shall," argues Smith, indicates
that the trial court must order that closed-circuit television
facilities be made available at a defendant's request.

But Smith's argument ignores the first section of the
statute, which allows for closed-circuit television only on
the motion of the prosecuting attorney. RCW 9A.44.150(1).
"When the words in a statute are clear and unequivocal,
this court is required to assume the Legislature meant
exactly what it said and apply the statute as written." *Duke
v. Boyd*, 133 Wn.2d 80, 87, 942 P.2d 351 (1997). RCW
9A.44.150(1) clearly and unequivocally allows the court to
consider the use of closed-circuit television only on motion
of the prosecuting attorney. And if the State does move to
present closed-circuit television, it must bear the cost. RCW
9A.44.150(9).

## II. Unavailability of Child Witness

Smith's second argument is that the trial court
erred in finding J.S. unavailable without providing the
opportunity for J.S. to testify via the closed-circuit televi-
sion as outlined in RCW 9A.44.150. Smith claims that his
constitutional right to confront the witness requires the
court to explore the possibility that J.S. could testify via
closed-circuit television.

RCW 9A.44.120, the child hearsay statute, allows the
court to admit hearsay statements of a child under 10 if

(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

When the trial court admits a child's hearsay statement under this statute, the Confrontation Clause requires that the child either testify in court or be found unavailable. *State v. Rohrich*, 132 Wn.2d 472, 480-81, 939 P.2d 697 (1997).[1] Thus, "unavailability" is both a constitutional and a statutory requirement.

---

[1] Despite *Rohrich*'s holding, it is unclear whether the federal confrontation clause in fact requires that a nontestifying child witness be unavailable before admitting his or her hearsay statements.

In 1980, the United States Supreme Court stated that the Confrontation Clause prohibits admission of hearsay unless the hearsay declarant either testifies in court or is found unavailable. *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980). But in 1986, the Court limited *Roberts'* broad holding, concluding that the Confrontation Clause requires unavailability when admitting hearsay under the prior testimony exception (the exception at issue in *Roberts*) but not under the coconspirator exception. *United States v. Inadi*, 475 U.S. 387, 399-400, 106 S. Ct. 1121, 89 L. Ed. 2d 390 (1986). In *Idaho v. Wright*, 497 U.S. 805, 815-16, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990), the Court expressly left open the question of whether the Confrontation Clause requires unavailability when admitting a child sex-abuse victim's hearsay statements under a residual hearsay exception. And in *White v. Illinois*, 502 U.S. 346, 357, 112 S. Ct. 736, 116 L. Ed. 2d 848 (1992), the Court concluded that the Confrontation Clause does not require unavailability when a child sex-abuse victim's statements were admitted as spontaneous declarations and statements made in the course of securing medical treatment.

A number of cases have interpreted *Inadi* and *White* to mean that the Confrontation Clause allows *reliable* hearsay regardless of the availability of the witness. *State v. Ackerman*, 90 Wn. App. 477, 953 P.2d 816 (1998). *See United States v. Rith*, 164 F.3d 1323 (10th Cir.), *cert. denied*, 528 U.S. 827 (1999); *United States v. Ismoila*, 100 F.3d 380 (5th Cir. 1996); *Ring v. Erickson*, 983 F.2d 818 (8th Cir. 1993); *State v. Kennedy*, 205 W. Va. 224, 517 S.E.2d 457 (1999); *Williamson v. State*, 707 A.2d 350 (Del. 1998); *State v. Jackson*, 348 N.C. 644, 503 S.E.2d 101 (1998); *State v. Sutherland*, 939 S.W.2d 373 (Mo. 1997); *People v. Peck*, 285 Ill. App. 3d 14, 674 N.E.2d 440, (1996); *State v. Hutto*, 325 S.C. 221, 481 S.E.2d 432 (1997). And a hearsay statement is *reliable* if it is either a firmly rooted hearsay exception *or* there are adequate indicia of the statement's reliability (the "residual trustworthiness test"). *Roberts*, 448 U.S. at 66. If these cases are correct, the only unavailability requirement is that imposed by the child hearsay statute.

## A. Unavailability Under RCW 9A.44.120

Under RCW 9A.44.120, a child's hearsay statements are admissible only if the child declarant testifies at trial or is unavailable. ER 804(a) governs availability of a witness under RCW 9A.44.120. *State v. Ryan*, 103 Wn.2d 165, 171, 691 P.2d 197 (1984). ER 804(a) states, in part: " 'Unavailability as a witness' includes situations in which the declarant: . . . [i]s unable to be present or to testify at the hearing because of . . . mental illness or infirmity." Child victims of sexual abuse are "unavailable" within the meaning of RCW 9A.44.120 if they are emotionally or psychologically unable to testify in court. *See, e.g., State v. Justiniano*, 48 Wn. App. 572, 575-76, 575 n.3, 740 P.2d 872 (1987) (defendant did not dispute that child was unavailable as a witness when "trauma of courtroom setting" left her unable to testify). And the legislature has acknowledged that the emotional trauma of testifying in a defendant's presence can render a child unavailable. *See* LAWS OF 1990, ch. 150, § 1 ("In rare cases, the child is so traumatized that the child is unable to testify at trial and is unavailable as a witness or the child's ability to communicate in front of the jury or defendant is so reduced that the truth-seeking function of trial is impaired.").

We review a trial court's decision to admit hearsay under RCW 9A.44.120 for an abuse of discretion. *State v. Hirschfield*, 99 Wn. App. 1, 3, 987 P.2d 99 (1999), *review denied*, 139 Wn.2d 1022 (2000). Here, the judge observed J.S. as she entered the courtroom and he heard testimony from J.S.'s social worker and counselor. Based on this evidence he concluded that she was unavailable within the meaning of the child hearsay statute because of her emotional state. We find no abuse of discretion.

## B. Unavailability Under the Federal Confrontation Clause

Out-of-court statements, even if admissible under a hearsay exception, must satisfy the defendant's constitutional

---

Here, the trial court found J.S.'s hearsay statements to be reliable, and Smith does not challenge this finding.

right to confront witnesses. *State v. Palomo*, 113 Wn.2d 789, 794, 783 P.2d 575 (1989). The Sixth Amendment's Confrontation Clause[2] requires that a child testify or be unavailable before the court may admit hearsay statements. *Rohrich*, 132 Wn.2d at 480-81. To show that a witness is unavailable under the Confrontation Clause, the prosecutor must "make a good faith effort to obtain the witness' presence at trial." *Ryan*, 103 Wn.2d at 171 (citing *Ohio v. Roberts*, 448 U.S. 56, 74, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980)). Whether the State has made a good faith effort to obtain the witness at trial depends on the particular facts of each case. *State v. Aaron*, 49 Wn. App. 735, 740, 745 P.2d 1316 (1987). Although *Roberts* requires that the State go to "reasonable" lengths to secure a witness's presence at trial, Washington courts have occasionally imposed a more demanding standard. *See, e.g., State v. Hobson*, 61 Wn. App. 330, 336, 810 P.2d 70 (1991) ("Washington courts have held, as a general rule, that the prosecution must use all available means to compel the witness's presence at trial."); *State v. Goddard*, 38 Wn. App. 509, 513, 685 P.2d 674 (1984) ("[T]he prosecution is required to avail itself of whatever procedures exist to bring a witness to trial.").

Even if we apply the more stringent standard—that the State use "all available means" to procure J.S.'s testimony—the State met its burden. The trial judge noted that closed-circuit television facilities are not available in Jefferson County. Smith does not challenge this finding. Rather, he argues in essence that "all available means" includes *any* existing technology, whether it is available in a particular county or not. Thus, according to Smith's argument, the State would be required to show that even with the most advanced video technology available, J.S.

---

[2] Smith does not argue that the state confrontation clause provides greater protection than the federal. Although five justices concluded in *State v. Foster*, 135 Wn.2d 441, 957 P.2d 712 (1998), that Washington's confrontation clause affords greater protection, the issue there was the constitutionality of permitting a witness to testify via closed-circuit television. Here, the issue is whether J.S. was unavailable to testify, thereby allowing admission of her hearsay statements. Because Smith has not raised the issue of greater state constitutional protection, we need not address it.

could not testify. We do not read "all available means" so broadly. Here, the State used all means available in Jefferson County to procure J.S.'s live testimony.[3] And the record does not show that closed-circuit television is readily and routinely available in Jefferson or other similar counties.

But Smith claims that *State v. Rohrich*, 82 Wn. App. 674, 918 P.2d 512 (1996), *aff'd*, 132 Wn.2d 472, 939 P.2d 697 (1997), requires the State to provide closed-circuit television. In *Rohrich*, the prosecutor attempted to comply with the requirements of RCW 9A.44.120—that the child either testify in court or be unavailable—by having the child testify about innocuous things like school or her family. The prosecutor did not ask the child about the alleged acts of sexual abuse. Thus, the defendant was unable to cross-examine her on the alleged abuse. Division Three of this Court held that this did not meet the testifying requirement of RCW 9A.44.120. *Rohrich*, 82 Wn. App. at 677. Because the child had not testified, her statements were inadmissible under RCW 9A.44.120 without a showing that she was unavailable and that her statements were corroborated. *Rohrich*, 82 Wn. App. at 678. The court then concluded that the prosecutor failed to establish that the child was unavailable. The prosecutor's purported reason for having the child victim "testify" about only innocuous subjects was the child's difficulty in repeating her accusations in the defendant's presence. *Rohrich*, 82 Wn. App. at 679. The court commented that if it was too traumatic for the child to discuss the alleged sexual abuse in the courtroom, the prosecutor could have arranged for closed-circuit television. *Rohrich*, 82 Wn. App. at 679.[4]

*Rohrich* is not on point. The question in *Rohrich* was whether the victim *testified* within the meaning of RCW

---

[3] Smith does not challenge the State's efforts to prepare J.S. to testify in court.

[4] When it affirmed the Court of Appeals' holding that the victim had not "testified" within the meaning of RCW 9A.44.120, our Supreme Court did not address the question of "unavailability." The Court simply stated without analysis that the child was available to testify. *Rohrich*, 132 Wn.2d at 482.

9A.44.120, not whether the victim was unavailable. Smith argues that the court cannot find a witness *unavailable* without providing the opportunity to testify via closed-circuit television. We do not read the court's comment that video was available as requiring the use of closed-circuit television to satisfy the Confrontation Clause. Smith's reliance on *Rohrich* is misplaced.

We address briefly the dissent. The dissent reasons that the State was required to offer J.S.'s testimony by closed-circuit television before it could show that she was unavailable. But this confuses two issues: (1) what the Confrontation Clause requires when a witness testifies live at trial and (2) what the Confrontation Clause requires when the State offers hearsay testimony against the accused. Our Supreme Court has recognized the difference. In *State v. Foster*, 135 Wn.2d 441, 957 P.2d 712 (1998), the Court considered whether Washington's closed-circuit television statute, RCW 9A.44.150, violated the state confrontation clause. Thus, *Foster* dealt with confrontation clause protections afforded to *in-court testimony*, not protections against the use of a nontestifying child's hearsay statements. Five justices (four in the dissent and one concurring/dissenting) concluded that the state confrontation clause is more protective than the federal. But the four dissenters recognized the difference between these two issues and expressly rejected the argument that a more protective state confrontation clause limits the use of hearsay:

> Contrary to the concerns of the majority, a strict reading of the confrontation clause in article I, section 22 does not implicate hearsay concerns. As noted above, the issue we face is the *method* by which an accused is guaranteed confrontation, not whether the accused is guaranteed confrontation at all. Under the hearsay exceptions, a value judgment has already been made that the accused is not entitled to confront those persons making the qualifying statements. Only after the right of confrontation arises with regard to available witnesses must we decide the *method by which* the accused is entitled to exercise that right. The correct analysis asks: (1) Does the

accused have a right to confrontation in the given instance? (2)
If so, to what type of confrontation is the accused entitled?

*Foster*, 135 Wn.2d at 495 (Johnson, J., dissenting).

The United States Supreme Court made a similar distinction in *White v. Illinois*, 502 U.S. 346, 112 S. Ct. 736, 116 L. Ed. 2d 848 (1992). There, the petitioner argued that *Maryland v. Craig*, 497 U.S. 836, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990), and *Coy v. Iowa*, 487 U.S. 1012, 108 S. Ct. 2798, 101 L. Ed. 2d 857 (1988), which both challenged the use of certain *in-court* procedures to protect *testifying* child witnesses, created a rule that "hearsay testimony offered by a child should be permitted only upon a showing of necessity—*i.e.*, in cases where necessary to protect the child's physical and psychological well-being." *White*, 502 U.S. at 357-58. The Court rejected this interpretation:

> *Coy* and *Craig* involved only the question of what *in-court* procedures are constitutionally required to guarantee a defendant's confrontation right once a witness is testifying. *Such a question is quite separate from that of what requirements the Confrontation Clause imposes as a predicate for the introduction of out-of-court declarations. Coy* and *Craig* did not speak to the latter question. As we recognized in *Coy*, the admissibility of hearsay statements raises concerns lying at the periphery of those that the Confrontation Clause is designed to address.

502 U.S. at 358 (second emphasis added).

We hold that the State was not required to provide closed-circuit television for J.S.'s testimony; we find no violation of Smith's right to confront the witness.

Affirmed.

QUINN-BRINTNALL, J. (concurring in judgment) — The main question before this court is whether the trial court erred in determining that J.S. was unavailable to tell her story to the jury directly. Although I am unable to agree with Judge Armstrong's conclusion that the plain language of RCW 9A.44.150(1) allows only the State to request video testimony, I note the trial court fully considered the defendant's request and I concur in the judgment. I base my opinion on

the fact that J.S.'s out-of-court statements, some of which were spontaneous or made during the course of medical examinations, reveal sufficient indirect evidence of abuse to be admissible and that the record clearly demonstrates J.S. was unavailable.

To admit a child's out-of-court reports of abuse pursuant to RCW 9A.44.120, the State must prove the child is competent, the child's statements are inherently reliable and corroborated, and the child is unavailable. *See State v. Ryan*, 103 Wn.2d 165, 171, 691 P.2d 197 (1984) (unavailability requires prosecutor's good faith effort to obtain witness' presence at trial); *State v. Swan*, 114 Wn.2d 613, 623, 790 P.2d 610 (1990) (reliability depends on the comments and circumstances surrounding the statement; corroboration includes indirect evidence, such as a child victim's precocious knowledge of sexual activity, a child's nightmares and psychological evidence). *See also State v. Bouchard*, 31 Wn. App. 381, 386, 639 P.2d 761 (1982) (evidence of prior sexual assault may be admitted if its relevance outweighs prejudice.). The competency of a witness depends on her ability to accurately perceive, recall, and relate facts. *State v. Karpenski*, 94 Wn. App. 80, 100-01, 971 P.2d 553 (1999).

Competency

In this case, all witnesses, including Smith, testified J.S. was an honest, intelligent, and precocious seven-year-old child. Moreover, she was not known as a child who told lies. Thus, while not stipulated, there was little question of J.S.'s competency to accurately recall and relate the events.

Inherent Reliability of Statements

J.S. and her two brothers were left at their aunt's home on November 29, 1998, supposedly for an hour. Their aunt's friend was watching the group of children. After they had been there for more than six hours, the friend began to "reassure" J.S. and her brother that their mother and Smith (the defendant) would soon arrive to take them home. J.S.'s older brother became agitated and indicated he

did not want to go home. He told the friend Smith had hit him with a belt. He showed her a belt mark on his body.[5]

The friend asked J.S. whether Smith had ever hit her. J.S. replied "not only hits." 1 Suppl. Report of Proceedings (RP) at 80. J.S. did not want to say anything in front of her aunt and indicated that she did not want to hurt her aunt. So the friend, herself a victim of abuse as a child, took J.S. into a bedroom to continue the conversation. The friend first described J.S.'s reluctance to disclose.

> At first she wouldn't talk. She started sucking her thumb. Fidgeting and crying. I told her—and she told me she'd get in trouble. . . . I said, "You won't get in any trouble." . . . "You mean it?" And, I told her there's—I wouldn't let anything happen to her. . . . She looked at me, and she'd look down, she'd look at me, she'd look down. She—cuz [sic] she was crying a lot.

1 Suppl. RP at 81. After being reassured, J.S. disclosed the actual events.

> She told me that—well, first I asked her if he ever touched her—if Mike ever had touched her. She told me, "Yes." I asked her if it was on the clothes or under the clothes. . . . She—at first she said, "Yes." . . . And, I said, "Where?" And, she pointed below the waist, and I asked her again if it was—I asked her again if it was under the clothes, and she told me, "Yes." I also—then I asked her if he made her touch him, and she wouldn't answer me. And, I asked that—I don't exactly know how many times I asked that question throughout our conversation. And, then, she proceeded to tell me that, "White stuff came out of it."

1 Suppl. RP at 82. Lastly, J.S. related to the friend her fear that her mother would not believe her.

> I'm calling the police. She's crying. She's scared to death. Didn't want to go home. Told me, "Mom wouldn't believe her." . . . She said that he said—she said that Mike would spank her if she told anybody. That's why she wouldn't talk to begin with. . . . I asked her if she tried talking to mom. She told me, "No."

---

[5] Smith admitted hitting the eight-year-old boy for pooping in his pants but claimed that he had swatted him with his hand eight times.

"Mommy didn't listen when she told her that he hit her—hit em."

1 Suppl. RP at 83.

Detective Dills from the Jefferson County Sheriff's Office interviewed J.S. on December 2, 1998, using various child interview aids. After discussing safe and unsafe touching, the detective asked J.S. if anything like that had ever happened to her. She said "yes." When asked to tell about it, she told the detective she had been touched by two separate individuals. One of them was the defendant, Smith.

J.S. indicated the molestation occurred in the bedroom her mother shared with Smith. She described the events both preceding and following the molestation. The detective recalled the specific account as follows:

> [S]he put her head down, and she opened her mouth and stuck her tongue out, and she went like, this, and she made like a licking motion from—from—with her chin down to her chest, her head tipped all the way up, and then she took her finger and she put it on her . . . crotch, and she ran her figure (sic) all the way up to her mouth. . . . [A]nd then she said . . . "and, then, he did, this," and she opened her mouth, and she opened it as wide as she could, and she stuck her finger back in the back of her throat until she gagged, and then she took her hand out of her mouth. . . . [A]nd she was telling me that this was with his private in her mouth. And, um,—and I said, "Well, did his private do anything?" . . . And she said that—that, "White stuff came out." And, I asked her how she knew it was white, and she told me it was daytime and she could see it. . . . I [asked her] did he say anything about telling or not telling, and she said, "Yes, he said he would spank me with a belt just like he did Joseph."

2 Suppl. RP at 106-09 (report to Detective Dills several days after molestation).

J.S. disclosed similar facts to the specialized sexual assault nurse examiner three weeks after the incident. She said:

> Mike was alone with her, and took her clothes off in bed, and laid on her, and touched her private parts. "Child reports to us

that Mike put his dick in her mouth and yucky stuff that was white came out of his dick." She told us this was around Thanksgiving time, and that she told her mom when her mom came home. She said that, "Mike's dick went by her vagina, and it hurt for only a second, and there was no blood." Um, the child also told us that she was not sure if the white stuff got on her vagina, and she thought that this only happened one time. And, then, [J.S.] proceeded to spontaneously demonstrate the yucky stuff that was in her mouth by spitting all over the exam floor, and . . . she actually got off the exam table and proceeded spitting on the exam floor, and told us that she was "showing us the white sticky stuff that came out of Mike's dick."

2 Suppl. RP at 161-62 (report to nurse).

Two months later, J.S. spontaneously repeated the account of oral sex with her therapist who was not interviewing her concerning the events.

Later on, it was the end of the session, and we were playing, and she was talking about good things at her foster mom's house, um, and she talked about that they had this really great chocolate pudding for desert (sic) last week, and that there was this—this good white stuff on the top of it, and was mixed in with it, and she looked at me, um, and I had—I don't know what expression I had on my face, but she looked at me, and she said, "Oh, no, Lisa, it's not like the white stuff that Mike put in my mouth. It was really good."

2 Suppl. RP at 136-37 (report to therapist).

J.S. gave consistent accounts, both spontaneously and upon questioning, over the course of two months. Her account of the molestation indicated it was not the result of coaching, including her reference to gagging and her recitation of events before and after. Even though she was unable to give a specific date of the molestation, she indicated it had occurred sometime around Thanksgiving, November 26, 1998. Based in part on the testimony set out above, the trial court found J.S.'s out-of-court reports and behaviors were reliable and the statements corroborated by indirect proof of the abuse.

In her dissent, Judge Hunt states, "And there is no indirect evidence of abuse, such as the child victim's precocious knowledge of sexual activity, *Swan*, 114 Wn.2d at 623, because J.S. had been molested previously. 2 Suppl. RP at 103." Dissent at 597 n.6. While it is true that J.S. had been molested previously, the record amply demonstrated that J.S. differentiated between the two incidents. From reports of the perpetrator, law enforcement and medical interviewers to whom J.S. made the reports were aware of the full extent of the previous molestation and that it had not involved either ejaculation or oral sex, which J.S. reported this time. Applying the *Swan* analysis to the record in this case reveals indirect evidence of abuse sufficient to corroborate the out of court reports.

Unavailability of Child

 In my view, this record discloses the defendant's request for video testimony was carefully considered by the trial court. Specifically, the defense requested: "I would remark that we do have the facilities in the District Courtroom that does—does have video tape communication in the jail wherein if the child were out there and made comfortable we could all view her." 1 Suppl. RP at 17.

Smith's request that the court use the closed circuit video equipment available in the district court clearly was not an acceptable option. First, the testimony of the social worker and therapist did not establish that J.S. *would* be able to testify via video. Secondly, the district court equipment was not set up to record from the witness chair and the district court courtroom accommodated only six jurors. The existing technology might have been satisfactory if the defendant waived his right to be present and he were the one to view the proceedings from the jail. As was his right, he declined to do this. But most importantly, use of the equipment as the defendant requested would have required the child to be in the jail. The trial court did not err in refusing to grant the defendant's request for the use of the district court's video equipment.

Given the nature of the defendant's request below and

the evidence on this record, it is clear that a traumatized child who is unable to even completely enter the courtroom would likewise be unable to testify by video from inside the jail. Thus, she is legally unavailable for purposes of the child hearsay statute.

On this record, I concur in the result reached by Judge Armstrong.

HUNT, J. (dissenting) — I respectfully dissent. I disagree with the majority that J.S. was "unavailable" as a witness for purposes of the child hearsay statute, RCW 9A.44.120. I would hold that admission of the child hearsay was reversible error.

In order for a trial court to admit hearsay statements of a child under the age of 10, (1) there must be sufficient indicia of reliability, and (2) the child must either testify in court *or*, if the child is unavailable to testify, the trial court may admit the child's hearsay statements "only if there is corroborative evidence of the act." RCW 9A.44.120(2)(b). Here, the State did not show that the child was unavailable as a witness; moreover, there was no corroborative evidence of the act independent of the child's out-of-court statements and communicative conduct.[6]

---

[6] I also disagree with the trial court's ruling that J.S.'s gestures accompanying her out-of-court statements to others constituted the requisite corroboration to satisfy RCW 9A.44.120(2)(b). 3 Report of Proceedings (RP) at 237-38. *See State v. Bowers*, 801 P.2d 511, 525 (Colo. 1990). According to Colorado Chief Justice Rovira (concurring in part, dissenting in part), Colorado's child hearsay statute, COLO. REV. STAT. § 13-25-129, was modeled after Washington's statute, RCW 9A.44.120. *Bowers*, 801 P.2d at 532. But Smith did not assign error to such use of nonverbal communications, which themselves constitute hearsay in this case. *See* ER 801(a) cmt. ("Oral assertions, written assertions, and assertive conduct all constitute statements, but acts of nonassertive conduct do not.").

Nor is there "corroborating evidence . . . 'of sufficient circumstances which would support a logical and reasonable inference' that the act of abuse described in the hearsay statement occurred." *State v. Swan*, 114 Wn.2d 613, 622, 790 P.2d 610, 615 (1990) (quoting *State v. Hunt*, 48 Wn. App. 840, 849, 741 P.2d 566 (1987)). Here, there is no direct physical or testimonial evidence. And there is no indirect evidence of abuse, such as the child victim's precocious knowledge of sexual activity, *Swan*, 114 Wn.2d at 623, because J.S. had been molested previously. 2 Suppl. RP at 103.

The trial court did witness, however, J.S.'s extreme, adverse, emotional reaction when she entered the courtroom, prepared to testify, and saw Smith; it was this

## I. Unavailability

The majority holds that the child victim was unavailable because (1) she was too traumatized to testify in open court and (2) Jefferson County did not have closed-circuit television available to comply with Smith's request that the child testify out of court via that medium. I would hold that because the State did not demonstrate its inability to televise the child victim's testimony using outside resources, she was not "unavailable" within the meaning of the child hearsay statute.

Even assuming that under RCW 9A.44.150(1), only the State can request closed-circuit televising of a witness's testimony, the State nonetheless had a choice: Where, as here, the child witness is emotionally unable to confront the accused in open court, the State can (1) accede to the defendant's request for closed-circuit televising of her testimony and attempt to procure the necessary equipment, or (2) risk a failure of proof by proceeding to trial without her testimony and without her hearsay statements. That Jefferson County did not have closed circuit television readily available for its courtroom does not explain the State's apparent lack of effort to procure such equipment elsewhere.[7]

Nor should the lack of closed-circuit television here automatically establish the child witness's unavailability for purposes of admitting her hearsay statements. On the contrary, ER 804(a)(4) provides that a witness who is

confrontation that rendered her unable to testify in open court that day. Whether this conduct would constitute sufficient corroboration should be for the trial court to determine on remand, independent of J.S.'s out-of-court hearsay, both verbal and nonverbal.

[7] In *Maryland v. Craig*, the Supreme Court held that a preference for face-to-face confrontation "must occasionally give way to considerations of public policy and the necessities of the case." But such necessities must be "case-specific": The court must hear evidence and determine whether use of the one-way closed-circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify. The court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant. *Maryland v. Craig*, 497 U.S. 836, 849, 855-56, 110 S. Ct. 3157, 3165, 3169, 111 L. Ed. 2d 666 (1990).

absent from the hearing is "unavailable as a witness" only where the proponent of the out-of-court statement has been unable to procure the declarant's testimony by "other reasonable means." The record here does not show that the State attempted, but was unable, to procure a closed-circuit television. If the record reflected that the State made such an effort, but still was unable to procure such a system in a timely fashion,[8] then I could agree with the majority's conclusion that "the State used all means available in Jefferson County to procure J.S.'s live testimony." Majority at 589.

But such was not the case. Here, the State's failure to attempt to produce her live testimony via closed-circuit television diminishes the quantum and quality of the State's evidence and ability to prove its case. Furthermore, it compromises Smith's constitutional right to confront his accuser.

## II. Constitutional Right of Confrontation

### A. Federal Constitution

Under the Sixth Amendment to the United States Constitution, U.S. Const. amend. VI, a criminal defendant has the right to confront his accuser in court by cross-examining the witness on the witness stand. *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S. Ct. 2531, 2537, 65 L. Ed. 2d 597 (1980); 1 McCormick on Evidence § 19 (John William Strong ed., 5th ed. 1999). Exceptions to this rule include nonhearsay evidence such as excited utterances. *See White v. Illinois*, 502 U.S. 346, 355-57, 112 S. Ct. 736, 742-43, 116 L. Ed. 2d 848 (1992). *See also United States v. Inadi*, 475 U.S. 387, 106 S. Ct. 1121, 89 L. Ed. 2d 390 (1986) (coconspirator statements).

Special statutory exceptions, such as the child hearsay statute, compromise the defendant's right to confront wit-

---

[8] E.g., the State might have shown futile efforts to rent or borrow such equipment upon learning that the county government had none.

nesses;[9] therefore, special safeguards are required when the witness is unavailable.[10] *See Ohio v. Roberts*, 448 U.S. at 65, 66 (to be admissible, an unavailable witness's hearsay statements must bear "adequate 'indicia of reliability' "; in other words, they must be "marked with such trustworthiness that 'there is no material departure from the reason of the general rule.' " (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 107, 54 S. Ct. 330, 78 L. Ed. 674 (1934)); *State v. Ryan*, 103 Wn.2d 165, 175, 691 P.2d 197 (1984); *Idaho v. Wright*, 497 U.S. 805, 814-15, 110 S. Ct. 3139, 3146, 111 L. Ed. 2d 638 (1990). *See also United States v. Owens*, 484 U.S. 554, 563, 108 S. Ct. 838, 844, 98 L. Ed. 2d 951 (1988), and ER 804(a)(4) for the definition of "unavailability" for hearsay exception purposes. Here, those safeguards are lacking.

## B. STATE CONSTITUTION

The Washington state constitution provides a more stringent confrontation right than does the federal constitution. An accused has a constitutional right "to meet the witnesses against him *face to face.*" CONST. art. I, § 22 (empha-

---

[9] The Supreme Court has explored the interrelationship between Washington's child hearsay statute and the confrontation clause of the federal Constitution:

The Legislature intended the child hearsay statute to be constitutional and "carefully drafted [it] to avoid any confrontation clause problems." Judy Yun, Note, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases*, 83 COLUM. L. REV. 1745, 1766 (1983). Therefore, we will interpret and apply the *child testifies* requirement in light of the requirements of the Confrontation Clause.

*State v. Rohrich*, 132 Wn.2d 472, 476, 939 P.2d 697 (1997).

[10] "The Sixth Amendment requires a demonstration of unavailability when the declarant witness is not produced. A witness may not be deemed unavailable unless the prosecution has made a good faith effort to obtain the witness' presence at trial." *State v. Ryan*, 103 Wn.2d 165, 170, 691 P.2d 197 (1984) (citation omitted). *See also Barber v. Page*, 390 U.S. 719, 724-25, 88 S. Ct. 1318, 1322, 20 L. Ed. 2d 255 (1968) (the confrontation clause requires that, before using the preliminary hearing testimony of a witness incarcerated in a federal penitentiary in another state, a state prosecutor must take appropriate steps to induce federal authorities to produce him at trial).

When a confrontable witness is not produced, unavailability must be certain. *State v. Smith*, 85 Wn.2d 840, 540 P.2d 424 (1975); *Ryan*, 103 Wn.2d at 170.

sis added).[11] "Where cross examination would serve to expose untrustworthiness or inaccuracy, denial of confrontation 'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.'" *Ryan*, 103 Wn.2d at 175 (some internal quotation marks omitted) (quoting *Davis v. Alaska*, 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974)).[12] Here, according to her counselor, the child victim possibly could have testified via closed-circuit television, during which Smith could have seen her face. Thus, the State's failure to produce this witness, who would have been "available" via this medium, violated Smith's state constitutional right to face his accuser.

I would reverse and remand for an evidentiary hearing on whether the child victim can testify via closed-circuit television, as the record suggests she might. If so, then it would be for the State to choose whether to proceed to trial with her testimony via closed-circuit television (assuming the State can procure the necessary equipment), or to proceed to trial without her testimony and without her hearsay.

I agree with the majority that the statute does not require a county to provide closed-circuit television. But in cases such as this one, where the child victim is unable to testify in open court as a result of emotional trauma, and where her hearsay statements are not corroborated by independent, nonhearsay evidence of abuse, closed-circuit television may be the State's only available option if it wishes to prosecute the case and the child is still unable to testify in open court on remand.[13] I would reverse.

Review granted at 145 Wn.2d 1033 (2002).

---

[11] *See State v. Foster*, 135 Wn.2d 441, 481-94, 957 P.2d 712 (1998) (5-4 decision) (Johnson, J., dissenting, arguing that the state confrontation clause preserves a defendant's right to a physical face-to-face meeting with witnesses against him or her). In *Foster*, five justices disagreed with the majority's opinion that the state and federal clauses provide identical protections.

[12] *See also State v. Clark*, 139 Wn.2d 152, 164-65, 985 P.2d 377, 383 (1999) (Alexander, J., dissenting) (arguing that the defendant was deprived of the full opportunity to cross-examine a child victim because the State failed to "elicit the damaging testimony" from the child regarding the alleged acts committed by the defendant, but instead limited her testimony to her acknowledgement that her prior statements to others about these acts were not true).

[13] See *Seaman v. State*, 608 So. 2d 71, 74 n.3 (Fla. Dist. Ct. App. 1992), in which

the defendant was convicted of two counts of sexual battery against two children. He argued on appeal that the trial court erred in denying his request for the child victim to testify via closed circuit television because: (1) the confrontation clause requires a state to call the victim to testify at trial; and (2) the child witness was not unavailable under subsection 90.803(23), Florida Statutes (1989), where the child could testify by closed circuit television under separate statutory procedures. (Note—the relevant Florida statutes are similar to Washington's statutes regarding child hearsay and use of closed circuit television.) *See* FLA. STAT. ANN. §§ 90.803(23), 92.54 (West 1989); RCW 9A.44.120, .150.

The appellate court affirmed the trial court's finding that the child victim was unavailable because it was supported by substantial competent evidence—the opinion of the child psychologist, who stated that the child would suffer severe emotional harm if she testified in *either* open court *or* via closed-circuit television. *Seaman*, 608 So. 2d at 74 n.3. Here however, J.S.'s counselor said that the child might be able to give video testimony. 1 Suppl. RP at 51.