59 P.3d 74 (2002)
148 Wash.2d 122
STATE of Washington, Respondent,
v.
Wallace Michael SMITH, Petitioner.
No. 71787-7.
Supreme Court of Washington, En Banc.
Argued June 25, 2002.
Decided December 12, 2002.
Reconsideration Denied February 19, 2003.
*76 James Bendell, Port Townsend, for Petitioner.
Juelie B. Dalzell, Jefferson County Prosecutor, Michael Haas, Deputy, Jill Landes, Deputy, Port Townsend, for Respondent.
*75 BRIDGE, J.
Wallace Michael Smith seeks reversal of the Court of Appeals decision affirming his conviction for first degree rape of a child (RCW 9A.44.073). Smith argues that the trial court violated his state and federal confrontation clause rights when it ruled that the child victim, J.S., was unavailable to testify for the purpose of allowing hearsay under RCW 9A.44.120 without first requiring the State to show that J.S. could not testify via closed-circuit television pursuant to RCW 9A.44.150. We hold that the trial court abused its discretion in admitting the hearsay statements without determining that J.S. could not have testified via closed-circuit television where there was testimony that J.S. may have been able to testify by that method.

I
In November 1998, J.S., then five years old, told her aunt, Christine Campbell, that her mother's boyfriend, Michael Smith, touched her "private part."[1] Campbell's friend, Angel Reed, took J.S. into another room to further discuss the issue. J.S. eventually told Reed that Smith touched her under her clothing and that "White stuff came out of it."[2] J.S. repeated these accusations to other adults including a nurse practitioner, a detective, a counselor, and a physician.
The Jefferson County prosecuting attorney charged Smith with one count of first degree rape of a child. The State filed notice of its intent to introduce hearsay statements made by J.S. pursuant to RCW 9A.44.120. The court held a hearing to determine J.S.'s competency to testify and the admissibility of her hearsay statements. The State called J.S. as its first witness. Upon seeing Smith in the courtroom, J.S. became scared, began to cry and immediately "clammed up."[3] Smith refused to concede that J.S. was incompetent and unavailable to testify based on her behavior. Smith argued that he was entitled to confront the witness against him and that he should be allowed to listen to J.S.'s testimony through other means, like closed-circuit television. The court responded that the courtroom lacked such facilities and proceeded to take testimony as to J.S.'s competency.
Jean Koester, a social worker with the Division of Child and Family Services and J.S.'s caseworker, testified that J.S. might be able to testify under certain circumstances. She stated,
I believe that she would [be able to testify], but I think that testimony would be best obtained if she could do it in a quiet reassuring environment rather than a larger courtroom such as this ... For example, if she were able to sit down with the Judge in closed Chambers with one or two people that she trusted.[[4]]
Koester further indicated that she did not think that J.S. would be able to go into the courtroom with the defendant present and testify, but that there may be "some things that could be tried to help her feel safe and protected" and that perhaps a different physical arrangement "might be worth exploring further."[5]
In response to Koester's testimony, the trial court stated that the trial was going to take place in that courtroom and therefore,
the question is whether [J.S.] is competent to present her testimony here in court to the jurors because criminal trials are tried by jurors ... and we don't have the option of having her testimony presented to a small group of people in a comfortable setting. The setting will be here in the Courtroom in front of the lawyers, in front of Mr. Smith, in front of the jurors, and in front of anybody else who wants to come *77 because the courtroom isn't a closed setting.[[6]]
The court then asked Koester if J.S. would be able to testify in that setting. Koester responded that she may be able to "tolerate the courtroom setting" "if she weren't exposed to the alleged perpetrator."[7] She also indicated that given time to prepare, "[J.S.'s] ability to testify would be improved."[8]
Lisa Marks, J.S.'s therapist, testified that she did not believe that J.S would be able to testify in open court with Smith present. She indicated that J.S. was a bright, engaging, articulate child, but that when the pressure was on, J.S. would get "overwhelmed and will just retreat and go into silence."[9] Marks also stated that video "might" work, but that it probably would not.[10]
The trial court ruled that J.S was "unavailable" for the purposes of RCW 9A.44.120. In so deciding, the court relied on J.S.'s reaction upon entering the courtroom as well as the efforts made by her therapist to familiarize her with the courtroom setting. The court accepted Marks' testimony as to J.S.'s ability to testify, but recognized Koester's testimony as to how J.S. might be able to testify in a different setting. However, it stated that the things Koester suggested "can't be accommodated in this court."[11] The court continued,
And, we do not have, as I've mentioned before, an arrangement for the defendant to be absent from the Courtroom, or watch the proceedings by video tape, or for the defendant to be absent from the Courtroom and present her testimony by video tape. That's not something that we have available, and it's not required by the statute, as I understand the statute.[[12]]
After hearing testimony as to J.S.'s out-of-court statements, the trial court found that the statements were reliable and supported by corroborating evidence as required by RCW 9A.44.120. It therefore admitted the hearsay statements. At trial, the State introduced five of J.S.'s six hearsay statements. J.S. did not testify. The jury convicted Smith of first degree rape of a child.
Smith appealed and the Court of Appeals, Division Two, affirmed in a split decision.[13] In the lead opinion, Chief Judge Armstrong held that RCW 9A.44.150 did not entitle a defendant to have closed-circuit television made available at state expense. Instead, the statute only allowed the court to consider the use of closed-circuit television upon a motion by the prosecutor. He further held that the trial court's ruling that J.S. was unavailable did not violate either RCW 9A.44.120 or the federal confrontation clause. He found that the trial court's decision, which was based on its own observations as well as the testimony of J.S.'s social worker and therapist, was not an abuse of discretion.
Judge Armstrong also rejected Smith's argument that pursuant to the confrontation clause, the trial court could not find a witness unavailable without the State first showing that the witness would not be able to testify via closed-circuit television. He reasoned that requiring such a showing confused the requirements of the confrontation clause when dealing with live testimony with the requirements for the admission of hearsay. Thus, he concluded that whether hearsay statements were admissible was not affected by what methods may be available for testifying.
Concurring in the result, Judge Quinn-Brintnall reasoned that J.S.'s out-of-court statements were reliable and corroborated by sufficient indirect evidence to satisfy RCW 9A.44.120. Although disagreeing with the lead opinion's holding that RCW 9A.44.150 allowed the court to consider the use of closed-circuit television only upon a motion from the prosecutor, she concluded that it was reasonable for the trial court to reject Smith's request because appropriate facilities *78 were not available and the testimony of the social worker and the therapist did not establish that J.S. would be able to testify via closed-circuit television. Thus, the trial court properly determined that J.S. was unavailable.
Dissenting, Judge Hunt disagreed that J.S. was unavailable for purposes of RCW 9A.44.120 and that the hearsay statements were corroborated by independent evidence. Relying on the Washington Rules of Evidence (ER), Rule 804(a)(4), she reasoned that a witness should not be considered unavailable unless the proponent of the hearsay statements shows that it has been unable to procure the testimony by "`other reasonable means.'"[14] Because the record did not show that the State attempted, but was unable to procure, a closed-circuit television system, it had not met its burden. She also concluded that the State's failure to make such a showing as well as its failure to show that J.S. could not have testified by such methods violated Smith's confrontation rights under both the state and federal constitutions. We granted Smith's petition for review.[15]

II
Smith asserts that the trial court's admission of J.S.'s hearsay statements violated his right to confront and cross-examine witnesses against him under both the Washington and United States Constitutions.[16] The State responds that the confrontation clause does not require the use of closed-circuit television when determining unavailability. It therefore contends that the trial court properly admitted hearsay evidence pursuant to RCW 9A.44.120.

A. Level of Scrutiny
Both the Washington and the United States Constitutions guarantee criminal defendants the right to confront witnesses against them. U.S. Const. amend. VI; Wash. Const., art. I, § 22. In State v. Foster, 135 Wash.2d 441, 957 P.2d 712 (1998), five members of this court concluded that article I, section 22 provided greater protection than the Sixth Amendment. Id. at 473-74, 957 P.2d 712 (Alexander, J., concurring in part, dissenting in part); id. at 481-94, 957 P.2d 712 (Johnson, J., dissenting).[17] There, the court analyzed whether RCW 9A.44.150, which permits a child victim to testify via closed-circuit television in certain situations, violated either the federal or state confrontation clauses.
Relying on Foster, Judge Hunt in dissent stated that the "Washington state constitution provides a more stringent confrontation right than does the federal constitution." State v. Smith, 108 Wash.App. 581, 600, 31 P.3d 1222 (2001). Although Smith raised this issue at oral argument, he did not discuss the issue in his petition for review. Because we have not yet decided whether article I, section 22 provides greater protection than the federal provision in this situation and because Smith did not brief the issue in accordance with State v. Gunwall, 106 Wash.2d 54, 58, 720 P.2d 808 (1986), we will analyze his claim within the perimeters of the Sixth Amendment.[18]

*79 B. Requirements of the Confrontation Clause

The confrontation clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. In general, the confrontation clause represents a "preference for live testimony," which includes the right to subject a witness to cross-examination. State v. Rohrich, 132 Wash.2d 472, 477-78, 939 P.2d 697 (1997).
Where the State wishes to introduce hearsay statements against a criminal defendant, the confrontation clause requires that it show the unavailability of the declarant or that the "out-of-court statement is inherently more reliable than any live in-court repetition would be." Rohrich, 132 Wash.2d at 479, 939 P.2d 697. The latter situation applies only to "those firmly rooted hearsay exceptions which, by their nature, are most reliable when originally made." Id. See also White v. Illinois, 502 U.S. 346, 355-56, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (allowing hearsay testimony under the "spontaneous declaration" and "medical examination" exceptions to the hearsay rule without a showing that the declarant was unavailable); United States v. Inadi, 475 U.S. 387, 395, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986) (allowing coconspirator statements made during the conspiracy without a showing that the declarant was unavailable to testify).
Where the out-of-court statement does not fall under one of the firmly rooted hearsay exceptions, the confrontation clause requires the proponent of the statement to demonstrate that the declarant is unavailable and that the statement "bears adequate `indicia of reliability.'" Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (quoting Mancusi v. Stubbs, 408 U.S. 204, 213, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972)). See also State v. Whelchel, 115 Wash.2d 708, 715, 801 P.2d 948 (1990); State v. Ryan, 103 Wash.2d 165, 170, 691 P.2d 197 (1984). A witness may not be considered unavailable unless the State has made a "good faith effort to obtain the witness' presence at trial." Ryan, 103 Wash.2d at 170, 691 P.2d 197. See also Roberts, 448 U.S. at 74, 100 S.Ct. 2531. The State is not required to perform a "futile act," but "`if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith may demand their effectuation.'" Ryan, 103 Wash.2d at 172, 691 P.2d 197 (quoting Roberts, 448 U.S. at 74, 100 S.Ct. 2531). See also ER 804(a)(5) (declarant is absent from hearing and "proponent of the statement has been unable to procure the declarant's attendance ... by process or other reasonable means"). Finally, the lengths to which the prosecution must go to produce the witness is "`a question of reasonableness.'" Roberts, 448 U.S. at 74, 100 S.Ct. 2531 (quoting California v. Green, 399 U.S. 149, 189 n. 22, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)).
In State v. Goddard, 38 Wash.App. 509, 513, 685 P.2d 674 (1984), the Court of Appeals stated that "the prosecution is required to avail itself of whatever procedures exist to bring a witness to trial." See also State v. Hobson, 61 Wash.App. 330, 336, 810 P.2d 70 (1991) (stating that "the prosecution must use all available means to compel the witness's presence at trial"). Pursuant to the good faith requirement, courts have required prosecutors to utilize available statutory procedures to produce a witness for trial before the witness may be considered unavailable. See, e.g., Barber v. Page, 390 U.S. 719, 723-24, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) (holding that the prosecution failed to make a good faith effort to procure a witness for trial where it made no effort to avail itself of either a statutory provision or agency rule allowing for federal prisoners to testify in state courts); Goddard, 38 Wash.App. at 513 n. 2, 685 P.2d 674 (indicating that the State should have utilized the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, chapter 10.55 RCW, to secure a witness's testimony before the witness could be deemed unavailable).

C. RCW 9A.44.120 and RCW 9A.44.150
This case involves the intersection of two statutes dealing with witness testimony and hearsay in child sexual abuse cases. First, RCW 9A.44.120 provides for the admission *80 of child hearsay statements when the statements describe sexual or physical abuse of the child and
(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement[s] provide sufficient indicia of reliability; and
(2) The child either:
(a) Testifies at the proceedings; or
(b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
RCW 9A.44.120. In Ryan, we upheld the statute against a confrontation clause challenge. 103 Wash.2d at 179, 691 P.2d 197. We determined that the statutory requirements of reliability, unavailability, and corroboration satisfied the confrontation clause requirements outlined in Roberts. Id. at 170, 691 P.2d 197. We also noted that "RCW 9A.44.120 is not within the category of firmly rooted hearsay exceptions." Id. Thus, unless the child testifies, a finding of unavailability is required by both the statute and the confrontation clause. A trial court's decision to admit hearsay statements under RCW 9A.44.120 is reviewed for abuse of discretion. State v. Hirschfield, 99 Wash.App. 1, 3, 987 P.2d 99 (1999).
Second, RCW 9A.44.150 allows a child to testify via closed-circuit television in a criminal proceeding in certain circumstances. RCW 9A.44.150 states in part,
(1) On motion of the prosecuting attorney in a criminal proceeding, the court may order that a child under the age of ten may testify in a room outside the presence of the defendant and the jury while one-way closed circuit television equipment simultaneously projects the child's testimony into another room so the defendant and the jury can watch and hear the child testify if:
(a) The testimony will describe an act or attempted act of sexual contact performed with or on the child by another or describe an act or attempted act of physical abuse against the child by another;
(b) The testimony is taken during the criminal proceeding;
(c) The court finds by substantial evidence, in a hearing conducted outside the presence of the jury, that requiring the child to testify in the presence of the defendant will cause the child to suffer serious emotional or mental distress that will prevent the child from reasonably communicating at the trial.
. . . .
(e) The court finds that the prosecutor has made all reasonable efforts to prepare the child for testifying, including informing the child or the child's parent or guardian about community counseling services, giving court tours, and explaining the trial process. If the prosecutor fails to demonstrate that preparations were implemented or the prosecutor in good faith attempted to implement them, the court shall deny the motion;
(f) The court balances the strength of the state's case without the testimony of the child against the defendant's constitutional rights and the degree of infringement of the closed-circuit television procedure on those rights;
(g) The court finds that no less restrictive method of obtaining the testimony exists that can adequately protect the child from the serious emotional or mental distress;
. . . .
(9) The state shall bear the costs of the closed-circuit television procedure.
RCW 9A.44.150. The statute was upheld against a confrontation clause challenge in Foster. 135 Wash.2d at 473, 481, 957 P.2d 712 (Alexander, J., concurring in part, dissenting in part).

III

A. Good Faith
Smith argues that because RCW 9A.44.150 provides prosecutors with the option of using closed-circuit television if a child witness is unable to testify in open court, the confrontation clause requires the State to utilize RCW 9A.44.150 before a court can decide that the child is unavailable for purposes *81 of RCW 9A.44.120. Pet. for Review at 9-12.
Rejecting Smith's argument, Judge Armstrong in the Court of Appeals lead opinion held that the State met its burden to use "`all available means' to procure J.S.'s testimony." Smith, 108 Wash.App. at 588, 31 P.3d 1222 (quoting Hobson, 61 Wash.App. at 336, 810 P.2d 70). He concluded that RCW 9A.44.150 did not affect the availability requirement of RCW 9A.44.120 or the confrontation clause. Id. at 590-91, 31 P.3d 1222. Relying on White and the dissenting opinion in Foster, he distinguished between what the confrontation clause required when evidence was admitted through one of the hearsay exceptions and the right to confront witnesses at trial. Id. (citing Foster, 135 Wash.2d at 495, 957 P.2d 712 (Johnson, J., dissenting); White, 502 U.S. at 357-58, 112 S.Ct. 736). In Foster, the dissent opined that the issue in that case was what method of testimony is guaranteed by the confrontation clause, not whether the defendant is guaranteed a right to confront a particular witness in general. 135 Wash.2d at 495, 957 P.2d 712. The dissent concluded that under the hearsay exceptions, "a value judgment has already been made that the accused is not entitled to confront those persons making the qualifying statements." Id. Relying on this distinction, Judge Armstrong concluded that the use of closed-circuit television was not required in determining unavailability because RCW 9A.44.120 was a hearsay exception and thus did not involve the question of what type of testimony was available. Smith, 108 Wash.App. at 590-91, 31 P.3d 1222.
This analysis ignores the main issue. Because RCW 9A.44.120 is not a well-established hearsay exception, in order to pass constitutional scrutiny, the State must show that the witness is unavailable. See Rohrich, 132 Wash.2d at 479, 939 P.2d 697. In determining whether a witness is unavailable, under the good faith requirement, a court should consider what options are available to the State in securing the child victim's testimony. See, e.g., Barber, 390 U.S. at 723-24, 88 S.Ct. 1318; Goddard, 38 Wash.App. at 513 n. 2, 685 P.2d 674. This would include the use of RCW 9A.44.150 where there is evidence that the child victim may be able to testify by alternative means.
In this case, the State did not utilize its option under RCW 9A.44.150 to secure J.S.'s testimony through the use of closed-circuit television even though evidence was presented that J.S. might be able to testify in another setting. Specifically, Koester testified that "if [J.S.] were able to sit down with the Judge in closed Chambers with one or two people that she trusted," she might be able to testify. Suppl. Report of Proceedings (SRP) at 26. This is very similar to the situation in Foster where the child victim was allowed to testify via closed-circuit television from the judge's chambers with only the victim's advocate, the prosecutor, the defense counsel, the court reporter, and the technician who operated the equipment present. 135 Wash.2d at 446, 957 P.2d 712. Thus, the State failed to meet its good faith requirement under the confrontation clause. Without this showing of good faith, we conclude that the trial court abused its discretion in admitting J.S.'s hearsay statements.
The fact that closed-circuit television was not installed in the courtroom in this case does not affect the State's burden under the good faith requirement. The use of RCW 9A.44.150 is not limited to courtrooms where closed-circuit television is readily available. To the contrary, by providing that the "state shall bear the costs of the closed-circuit television procedure," the statute anticipates situations in which county facilities may not have closed-circuit television installed. RCW 9A.44.150(9).
The State also argues that this court should not require the use of closed-circuit television in situations where a child victim is unable to testify in open court because of the potentially large cost involved. Suppl. Br. of Resp't at 11. However, our holding is limited to situations in which evidence is presented that the child victim may be able to testify through alternative means. In addition, what the State must do to produce a witness is still governed by the overall reasonableness standard. See Roberts, 448 U.S. at 74, 100 S.Ct. 2531. Therefore, the potentially large cost of requiring testimony by closed-circuit *82 television is tempered by the State's ability to show that the use of closed-circuit television would not be reasonable where the equipment is not already installed in the courtroom and the cost of bringing in outside equipment would be very high. The State made no such showing in this case.[19]

B. Sufficiency of the Evidence
Finally, the State asserts that the specific facts in this case demonstrate that J.S. would have been unable to testify even if closed-circuit television had been available. Specifically, it relies on the trial court's acceptance of Marks' testimony that when "`the pressure was put on [J.S.] just wouldn't talk.'" Answer to Pet. for Review at 12 (quoting SRP at 59).
Contrary to the State's assertion, the trial court did not decide whether J.S. could have testified under different circumstances. In fact, during its questioning of Koester as well as in its oral ruling, the court specifically rejected consideration of other alternatives to J.S. testifying in the presence of Smith and the jury because they were not available in that courtroom. SRP at 28 (stating that the trial setting "will be here in the Courtroom in front of the lawyers, in front of Mr. Smith, in front of the jurors, and in front of anybody else who wants to come because the courtroom isn't a closed setting"); SRP at 60 (stating that "the kinds of things [Koester felt] would allow [J.S.] to be comfortable enough to present her testimony can't be accommodated in this court"). Because the trial court declined to decide this issue and because testimony was offered to the contrary, we find the evidence is insufficient to hold that J.S. could not have testified even with the use of closed-circuit television.

IV
The trial court's admission of J.S.'s hearsay statements was error. But it is well recognized that constitutional error that violates a defendant's rights under the confrontation clause may be so inconsequential that it is rendered harmless. State v. Guloy, 104 Wash.2d 412, 426, 705 P.2d 1182 (1985). Applying harmless error analysis to this case, Smith's conviction will be upheld only if we are convinced beyond a reasonable doubt that any reasonable jury would have reached the same result without the error. Whelchel, 115 Wash.2d at 728, 801 P.2d 948. We make that determination by utilizing the "overwhelming untainted evidence" test. Under this test, we consider the untainted evidence admitted at trial to determine if it is so overwhelming that it necessarily leads to a finding of guilt. Guloy, 104 Wash.2d at 426, 705 P.2d 1182. The "overwhelming untainted evidence" test allows us to avoid reversal on hypertechnical grounds but ensures that a conviction will be reversed where there is any reasonable possibility that the use of inadmissible evidence was necessary to reach a guilty verdict. Id.
In this case, Smith's conviction followed the admission of five of J.S.'s six hearsay statements. Aside from these hearsay statements, there is no other evidence of Smith's guilt. It is evident then from these facts that were this case to be tried without J.S.'s hearsay statements, no reasonable jury would have convicted him of this crime. Thus, we find that the court's error was not harmless.

V
We therefore hold that before a court can find a child victim unavailable for the purpose of admitting his or her hearsay statements under RCW 9A.44.120, it must consider the use of closed-circuit television pursuant to RCW 9A.44.150 if there is evidence that the child victim may be able to testify in an alternative setting. In addition, if closed-circuit television equipment is not readily available in the courtroom, the court may consider whether the cost of bringing in outside equipment is unreasonable. Because testimony was offered in this case that J.S. might be able to testify in an alternative setting, the trial court erred in admitting her hearsay statements without first determining *83 that she would not be able to testify via closed-circuit television or that bringing in outside equipment would be financially unreasonable. Furthermore, because a reasonable jury would not have convicted Smith absent this error, the trial court's admission of J.S.'s hearsay statements was not harmless.
We reverse the Court of Appeals and vacate Smith's conviction for first degree rape of a child.
ALEXANDER, C.J., SMITH, JOHNSON, MADSEN, IRELAND, CHAMBERS and OWENS, JJ., concur.
SANDERS, J., (concurring).
The majority holds Smith's constitutional right to confront witnesses was violated and the charges should be dismissed. I agree. However, I write separately because the majority suggests hearsay statements against a defendant could be admitted in some circumstances under RCW 9A.44.120 without the hearsay declarant actually testifying, even when available for trial. Such an application of RCW 9A.44.120, in my view, violates the defendant's right to confront witnesses against him as guaranteed by the Sixth Amendment.[1]
The confrontation clause generally requires a witness against the defendant to either testify in court or be "unavailable" before that witness's hearsay statement may be admitted. Ohio v. Roberts, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980); State v. Ryan, 103 Wash.2d 165, 169-70, 691 P.2d 197 (1984) (following Roberts). To understand "unavailable" as used in RCW 9A.44.120, we must keep the requirements of the confrontation clause in mind, reading the statute to conform to the constitution. See State v. Rohrich, 132 Wash.2d 472, 476, 939 P.2d 697 (1997).
For purposes of the confrontation clause, a witness is "unavailable" only after a good-faith effort by the prosecution to obtain the witness's presence at trial is unsuccessful. Barber v. Page, 390 U.S. 719, 724-25, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); Ryan, 103 Wash.2d at 171, 691 P.2d 197. But the majority erroneously suggests what is needed is a good-faith effort to secure particular testimony from the child. Majority at 81.
Barber held "a witness is not `unavailable'... unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." Barber, 390 U.S. at 724-25, 88 S.Ct. 1318 (emphasis added). California v. Green reiterated this rule: "We held that [the unavailability] exception would not justify the denial of confrontation where the State had not made a good-faith effort to obtain the presence of the allegedly `unavailable' witness." 399 U.S. 149, 162, 90 S.Ct. 1930, 1937, 26 L.Ed.2d 489 (1970) (emphasis added). And in Ohio v. Roberts the Court held "[t]he basic litmus of Sixth Amendment unavailability is established: `[A] witness is not "unavailable" for purposes of ... the ... exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial.'" Roberts, 448 U.S. at 74, 100 S.Ct. 2531 (quoting Barber, 390 U.S. at 724-25, 88 S.Ct. 1318). In State v. Ryan we recognized the same: "Unavailability in the constitutional sense ... requires the prosecutor to make a good faith effort to obtain the witness' presence at trial." 103 Wash.2d at 171, 691 P.2d 197 (citing Roberts, 448 U.S. at 74, 100 S.Ct. 2531) (emphasis added). Actually bringing the witness to the stand and asking relevant questions on direct examination is clearly what is intended. The response, if any, is beside the point.
But the majority treats a witness as "available" only after closed-circuit television is sought and obtained. This suggests a witness must not only be present but also able to testify effectively and comfortably. But the confrontation clause requires no such thing. In a criminal case a witness must be questioned by the prosecution on direct about the contents of the witness's hearsay statement if it is to be admitted. See Rohrich, 132 Wash.2d at 478, 939 P.2d 697. This is necessary to allow effective cross-examination. *84 Id. The confrontation clause is then satisfied regardless of any particular response from the witness.
In California v. Green the Supreme Court made clear the substance of a witness's testimony is irrelevant to the requirements of the clause:
[T]he State here has made every effort to introduce its evidence through the live testimony of the witness; it produced Porter at trial, swore him as a witness, and tendered him for cross-examination. Whether Porter then testified in a manner consistent or inconsistent with his preliminary hearing testimony, claimed a loss of memory, claimed his privilege against compulsory self-incrimination, or simply refused to answer, nothing in the Confrontation Clause prohibited the State from also relying on his prior testimony to prove its case against Green.
Green, 399 U.S. at 167-68, 90 S.Ct. 1930. This theme was sounded again in United States v. Owens where a prior identification was admissible even though the witness could no longer make the same identification at trial due to memory loss. 484 U.S. 554, 560-62, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). The presence of the witness allowed for cross-examination under oath in view of the jury. This was sufficient to satisfy the confrontation clause regardless of how the witness testified. Id. at 560-61, 108 S.Ct. 838. In State v. Clark we similarly found it irrelevant to the right of confrontation that a witness claimed her prior statements had been lies. The prior statements were nonetheless admissible and her hearsay declarations, even when controverted by live testimony, were consistent with the confrontation right of the accused. State v. Clark, 139 Wash.2d 152, 159-60, 985 P.2d 377 (1999). Again it was enough that the witness testified and the defense had an opportunity for cross-examination. Id. at 161, 985 P.2d 377.
In all of these cases the opportunity for cross-examination was key. Cross-examination has been characterized as "the `greatest legal engine ever invented for the discovery of truth.'" Green, 399 U.S. at 158, 90 S.Ct. 1930 (quoting 5 John Henry Wigmore, Evidence § 1367 (3d ed.1940)). This court has recognized that cross-examination is an indispensable component of the confrontation clause because of its role in truth finding. See Rohrich, 132 Wash.2d at 477-78, 939 P.2d 697. The majority loses sight of this essential point.
The availability of closed-circuit, television-aided testimony was narrowly upheld as constitutional by the Supreme Court in Maryland v. Craig on the grounds that it aided the important public policy of prosecuting child molesters without further traumatizing their victims. 497 U.S. 836, 850, 852, 110 S.Ct. 3157, 3166, 3167, 111 L.Ed.2d 666 (1990). Yet even the majority in that case stopped far short of allowing a witness to avoid testifying altogether. The majority upheld the statute in part because it still allowed all core elements of the right of confrontation except an actual face-to-face encounter:
Maryland's procedure preserves all of the other elements of the confrontation right: The child witness must be competent to testify and must testify under oath; the defendant retains full opportunity for contemporaneous cross-examination; and the judge, jury, and defendant are able to view (albeit by video monitor) the demeanor (and body) of the witness as he or she testifies. Although we are mindful of the many subtle effects face-to-face confrontation may have on an adversary criminal proceeding, the presence of these other elements of confrontationoath, cross-examination, and observation of the witness' demeanoradequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony. These safeguards of reliability and adversariness render the use of such a procedure a far cry from the undisputed prohibition of the Confrontation Clause: trial by ex parte affidavit or inquisition.
Craig, 497 U.S. at 851, 110 S.Ct. 3157. In Craig the court was closely split with four justices dissenting. The dissenting justices argued that the right of confrontation should not be made to yield to public policy and that face-to-face confrontation was an essential *85 component of the confrontation right. Craig, 497 U.S. at 862, 110 S.Ct. 3157 (Scalia, J., dissenting).
But in any case, neither the majority nor the dissent in Craig, nor any other holding, ever suggested that someday testimony could be dispensed with entirely when an available witness is not called to the stand. The confrontation clause continues to require a witness who is available to be present must testify if his or her statement is to be used against a defendant.
The reasoning applied by the majority not only conflicts with the confrontation clause, it also misconstrues RCW 9A.44.150. That statute requires a "motion of the prosecuting attorney" to use closed-circuit television. RCW 9A.44.150(1). The court's involvement arises only upon the prosecution's motion: "[T]he court may allow a child to testify in the presence of the defendant but outside the presence of the jury, via closed circuit television, if the court finds, upon motion and hearing outside the presence of the jury, that the child will suffer serious emotional distress." RCW 9A.44.150(1)(d) (emphasis added). The majority erroneously reads into the statute a duty of the court to "consider the use of closed-circuit television pursuant to RCW 9A.44.150 if there is evidence that the child victim may be able to testify in an alternative setting." Majority at 82. Nothing in the statute contemplates such a role for the court. Neither does the statute give the court discretion to deny the request for closed-circuit television on the basis of costliness as the majority suggests. RCW 9A.44.150 provides the prosecution with a powerful tool for obtaining testimony from child witnesses via closed-circuit television at state cost, but fundamentally the responsibility for deciding whether to use this tool in a particular case remains with the prosecution. If the prosecution does not request the use of this equipment and chooses not to put a witness who is available to be present on the stand, the result dictated by the confrontation clause is the exclusion of the nontestifying witness's hearsay statements.
Here the court allowed the admission of hearsay statements by a nontestifying witness against the defendant although the witness was available to be present at trial. Regardless of the availability of closed-circuit television equipment, this violates the Sixth Amendment confrontation right of the defendant.
I therefore concur.
NOTES
[1] Suppl. Report of Proceedings (SRP) at 63.
[2] SRP at 82.
[3] SRP at 13, 58.
[4] SRP at 26.
[5] SRP at 26-27.
[6] SRP at 28.
[7] SRP at 29.
[8] SRP at 31.
[9] SRP at 40.
[10] SRP at 51.
[11] SRP at 60.
[12] SRP at 60.
[13] State v. Smith, 108 Wash.App. 581, 31 P.3d 1222 (2001).
[14] Smith, 108 Wash.App. at 598-99, 31 P.3d 1222 (Hunt, J., dissenting) (quoting ER 804(a)(4)).
[15] State v. Smith, 145 Wash.2d 1033, 43 P.3d 20 (2002).
[16] At oral argument, Smith also asserted that the hearsay statements were not corroborated by independent evidence as required by RCW 9A.44.120. However, he did not directly brief this issue in the petition for review but instead incorporated by reference the dissenting opinion of Judge Hunt, which did address the issue. See Pet. for Review at 9; Smith, 108 Wash.App. at 597 n. 6, 31 P.3d 1222 (Hunt, J., dissenting). Because a court will generally not consider an issue that has not been adequately argued, Amalgamated Transit Union Local 587 v. State, 142 Wash.2d 183, 203, 11 P.3d 762, 27 P.3d 608 (2000), we decline to decide whether the trial court properly concluded that the hearsay statements were corroborated by independent evidence. Smith does not challenge the trial court's determination that the hearsay statements were reliable.
[17] Article I, section 22 of the Washington State Constitution states that, "[i]n criminal prosecutions the accused shall have the right to ... meet the witnesses against him face to face."
[18] Smith's attempt to incorporate the dissenting judge's opinion into his petition for review does not affect our conclusion. State v. Johnson, 119 Wash.2d 167, 171, 829 P.2d 1082 (1992) ("[p]arties raising constitutional issues must present considered arguments to [the] court").
[19] Although the trial court noted that the district court had a closed-circuit television setup that allowed for testimony to be broadcast from the county jail, it did not seriously consider this option. SRP at 17.
[1] It may be that article I, section 22 of the state constitution would provide greater protection than the Sixth Amendment, as the majority notes, but where the parties have not briefed this issue we will decline to consider it further.