# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON,

Respondent,

v.

PETER GERALD PICOLET,

Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

No. 75626-5-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: January 16, 2018

APPELWICK, J. — Picolet seeks a new trial on burglary charges based on violation of his right confront witnesses against him. We affirm.

## FACTS

On the evening of February 26, 2015, police were called by a silent alarm at a business in Tukwila. When police arrived, they were approached by a man who claimed to be a live-in security officer. He told police that the warehouse had been burglarized, that he had been in a physical struggle with the burglar, and he identified the direction that the suspect had fled.

The police tracked and apprehended Peter Picolet using a police dog. While being apprehended, Picolet wrestled the dog to the ground and began kicking him. The dog was injured and limping after the confrontation.

Police learned that the man claiming to be a security officer was Michael Howie, and that Howie was not in any way associated with the business. The State charged Picolet and Howie with burglary in the second degree, and also charged Picolet with attempted harming of a police dog.

The trial court admitted testimony of officers of what they were told by Howie when they arrived at the scene: that a black or Hispanic burglar[1] assaulted him during the burglary, and then fled to the train tracks. The State was not able to produce Howie for trial, and therefore he was not subject to cross-examination.

The State argued that its only purpose for offering the evidence was to show the state of mind of the police officers relative to their decision to use a police dog. Picolet objected, but the trial court allowed the statement into evidence, because there was a possibility that Picolet would argue self-defense with respect to the attempted harming a police dog.

However, midtrial the trial court clarified its ruling. The trial court agreed with Picolet that Howie should not be identified as the source of that statement, because it would prejudice Picolet if the jury learned that a potential accomplice had implicated him. The State indicated that it was happy to comply with this limitation, and told the court that it intended to elicit only the facts that the police were relying on.

But, one of the business's employees accidentally identified Howie during direct examination: "the one that I first saw with the police officers was a man named Michael Howie." Picolet immediately objected and moved for a mistrial.

---

[1] The trial court took judicial notice that Picolet was not black or Hispanic.

The trial court denied this motion. But, it granted Picolet's request to redact references to Howie from the recordings of Picolet's phone calls in the jail that were to be presented to the jury, because identification of Howie by name would suggest that the two were working together.

The jury found Picolet guilty of burglary in the second degree. But, it was unable to reach a verdict on the charge of attempted harming a police dog. The State then dismissed this charge. Picolet appeals.

## DISCUSSION

Picolet assigns error to the denial of his motion for a mistrial after a witness mentioned Howie's name. He claims that this identification of the codefendant as the maker of the statement telling the police where to locate the burglar, together with the absence of the codefendant, resulted in a violation of his constitutional right to confront witnesses against him. We review a trial court's denial of a motion for a mistrial for abuse of discretion. State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989).

However, we review alleged confrontation clause violations de novo. State v. Jasper, 174 Wn.2d 96, 108, 271 P.3d 876 (2012). The confrontation clause bars admission of testimonial statements of a witness who does not appear at trial unless he or she is unavailable to testify, and the defendant had a prior opportunity for cross-examination. U.S. CONST., amend. VI; Davis v. Washington, 547 U.S. 813, 821, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

The State argues that the confrontation clause is not implicated, because the statement was not offered for the truth of the matter asserted. The State argued that it sought to introduce the evidence solely to show the information that officers were relying on regarding the use of the police dog:

> [A]t the time they were under the impression -- the police were -- were operating [under] the impression that there was a burglary in the first degree. They had been told that there was a, um -- an attack on somebody who was operating as security. Um, now, that -- that ends up being, um, Mr., uh -- Mr. Picolet's co-defendant, um, who -- who police later determined was not in any way associated with the business once the key holder arrived. . . .
>
> . . . .
>
> So what I would be seeking to admit is the information that Officer Frank was relying on in order to make his decisions as an officer on how to go about doing his investigation. I.E. [sic] in this case, whether or not to use the K-9, um, Ace. Whether or not Ace should be released into the area.

Thus, the State had a clear and proper purpose for offering the evidence from Howie: countering Picolet's narrative that police were overreacting to the situation. And, in closing argument, Picolet stated multiple times that police were overreacting in their response to the false information conveyed by Howie.[2] Regardless of whether what Howie said was true or false, the purpose of the

---

[2] Picolet nevertheless argues that there was no reason to offer the statement other than for its truth, because there was no self-defense jury instruction given. But, he cites no authority suggesting that a party is entitled to counter a claim of self-defense only when a self-defense jury instruction is given. He cites State v. Edwards, 131 Wn. App. 611, 614-15, 128 P.3d 631 (2006), where evidence of why police began an investigation was excluded, because it did not bear on the elements of the offense, and the only purpose it could have served was to prove the defendant's guilt. But, here Picolet's theory of the case was that officers overreacted. It provided a basis for him to claim he acted in self-defense. The State was entitled to rebut this theory.

4

statement was to show what the officers were relying on when deciding to use the police dog. The evidence was admitted for a proper purpose, and not offered for the truth of the matter asserted.[3]

Picolet argues that even if the statements were not offered for the truth of the matter asserted, they should nevertheless be subject to exclusion under the confrontation clause. In Crawford v. Washington, citing three-decade old precedent, the United States Supreme Court reiterated that "[t]he [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S. 36, 59 n.9, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

Eight years later—in plurality, concurring, and dissenting opinions—all nine Justices continued to adhere to this view. In a four justice plurality opinion, Justice Alito repeatedly discusses this limitation on the confrontation right, first observing that "this statement was not admitted for the truth of the matter asserted, and it is settled that the Confrontation Clause does not bar the admission of such statements." Williams v. Illinois, 567 U.S. 50, 57, 132 S. Ct. 2221, 183 L. Ed. 2d 89 (2012) (plurality opinion). The plurality repeats this principle: "We now conclude that this form of expert testimony does not violate the Confrontation Clause because that provision has no application to out-of-court statements that are not offered to prove the truth of the matter asserted." Id. at 57-58. This was later again

---

[3] The police report indicated that in a separate statement Howie admitted to being in the building and identified a second offender, Picolet, as being the second subject. This statement, by contrast, is clearly testimonial. However, the record does not suggest that the jury heard evidence that Howie confessed and this statement is not at issue in this appeal.

repeated. Crawford, Justice Alito wrote, "took pains to reaffirm the proposition that the Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" Id. at 70 (alterations in original) (quoting Crawford, 541 U.S. at 59-60 n.9).

Justice Thomas, who possesses a singular view of the confrontation clause, concurred in the judgment but agreed with the foregoing limitation: "As the Court has explained, '[t]he [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" Williams, 567 U.S. at 104 (Thomas, J., concurring) (alterations in original) (quoting Crawford, 541 U.S. at 60 n.9). That makes five justices who shared this view.

The other four justices, although in dissent, did also. Id. at 125 (Kagan, J., dissenting). There is, the dissenters noted, "a limit to the Confrontation Clause recognized in Crawford. 'The clause,' we cautioned there, 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" Id. (Kagan, J., dissenting) (quoting Crawford, 541 U.S. at 59-60, n.9).

Thus, a unanimous United States Supreme Court opined that the confrontation clause applies only to statements offered to prove the truth of the matter asserted. Following binding United States Supreme Court precedent, we hold the challenged testimony was not offered to prove its truth and, therefore, is not subject to a Confrontation Clause challenge.

Initially, citing Crawford, the Washington Supreme Court recognized this authority: "[E]ven testimonial statements may be admitted if offered for purposes

other than to prove the truth of the matter asserted." State v. Davis, 154 Wn.2d 291, 301, 111 P.3d 844 (2005), aff'd by Davis v. Washington 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).

However, two years later, our Supreme Court took a contrary view: "[W]e are not convinced a trial court's ruling that a statement is offered for a purpose other than to prove the truth of the matter asserted immunizes the statement from confrontation clause analysis. To survive a hearsay challenge is not, per se, to survive a confrontation clause challenge." State v. Mason, 160 Wn.2d 910, 922, 162 P.3d 396 (2007). In the six years since the United States Supreme Court decided the Williams case, the Washington Supreme Court has not disavowed its contrary holding in Mason. Thus, we must decide this case on alternative bases.

Picolet argues that the evidence violated the confrontation clause and the prejudice from the evidence was so overwhelming it could not have been cured by a limiting instruction. He contends that a mistrial therefore should have been granted on confrontation clause grounds under Bruton v. United States, 391 U.S. 123, 126, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968).

Bruton's codefendant's confession was admitted in a joint trial. Id. at 124-25. But, the trial court explicitly instructed the jury to use that confession against only the codefendant who gave the confession. Id. It was not to consider the confession in determining Bruton's guilt. Id. The Supreme Court held that this instruction was insufficient, and that the statements violated the confrontation clause:

> [T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. . . . Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others.

Id. at 135-36.

But, Bruton is distinguishable. First, the statement by Howie was not a confession and it did not implicate Picolet when it was made. It required additional later inferences to even associate the statement with Picolet. Second, unlike Bruton, Picolet was not tried jointly with Howie. Id. at 124. The statement by Howie at issue here was not as powerful as that in Bruton, and the maker of the statement did not stand side-by-side with the defendant. Bruton does not compel us to conclude that Howie's statement should have been excluded. We agree with the State that here, unlike Bruton, a limiting instruction, if requested, would have been sufficient.

Picolet also argues that State v. Berniard, 182 Wn. App. 106, 129-30, 327 P.3d 1290 (2014) requires reversal. There, the trial court admitted a detective's testimony recalling statements of codefendants that identified Berniard as a participant in the crime. Id. at 130. The State argued that the testimony's purpose was explaining the officers' state of mind, and specifically why they were investigating a man named YG, who was later identified as Berniard. Id. at 127-28. The statements at issue were taken in the course of interrogations, and the

State therefore conceded that they were testimonial under Crawford v. Washington, 541 U.S. 36, 52, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Berniard, 182 Wn. App. at 127.

In the statements, the codefendants conceded that four participants were involved in the crime at issue, and indirectly identified Berniard as the fourth participant. Id. The officer testified that two codefendants "both explicitly identified the other people involved in the crimes." Id. at 130. Shortly thereafter, the officer "testified that he began trying to identify a black male known as YG, whom he later discovered was Berniard." Id. This testimony "'incorporate[d] out-of-court statements' and was tantamount to telling the jury that . . . [the codefendants] identified Berniard as one of the participants." Id. (first alteration in original) (quoting State v. O'Hara, 141 Wn. App. 900, 910, 174 P.3d 114 (2007). reversed on other grounds, 167 Wn.2d 91, 217 P.3d 756 (2009)). The Court of Appeals observed that "only the most inattentive juror could have missed the implication that [the codefendants] had identified Berniard . . . as the fourth participant." Id. at 127. The court reversed, holding that, even though the statements were offered to show the officers' state of mind (i.e., not for the truth of the matter asserted), they also directly implicated Berniard as a perpetrator, and were therefore subject to exclusion under the confrontation clause. Id. at 129-30, 132.

The circumstances and identification in Berniard are critically different. The statements by Howie were not taken during interrogation. Howie identified himself as a victim, gave a faulty racial description of his assailant, and gave the direction the assailant fled. Howie did not identify Picolet by name, nor by any other

descriptors that led to his identification. The State was not attempting to prove Picolet assaulted Howie, was Black or Hispanic, or fled toward the railroad tracks. Howie did not admit guilt in this statement. Howie was not at trial with Picolet. Berniard does not require reversal here.

And, even if any confrontation clause error occurred, it is subject to harmless error analysis. State v. Watt, 160 Wn.2d 626, 633, 160 P.3d 640 (2007). An error is harmless if we are convinced beyond a reasonable doubt that any reasonable jury would have reached the same result without any error. State v. Smith, 148 Wn.2d 122, 139, 59 P.3d 74 (2002). Here, two individuals were visible on security footage from inside the business. A silent alarm was triggered. Picolet was located by a police dog that tracked the suspect from the burglary location. Picolet was located lying down in stagnant swamp water, half-submerged, while it was raining heavily, at night, in late February. Picolet was in possession of a tool subsequently identified as missing from the business. Even if Howie's statement had been excluded for confrontation clause reasons, any reasonable jury would have found Picolet guilty beyond a reasonable doubt without it.

We affirm.

WE CONCUR: